## J. L. MOTT IRON WORKS *vs.* JOHN A. ARNOLD.

JUNE 20, 1913.

PRESENT: Johnson, C. J., Parkhurst and Sweetland, JJ.

*(1)    Stockholders Liability.    Corporations.*

Gen. Laws, 1896, cap. 180, §§ 1, 2, 3, providing that the members of every incorporated manufacturing company shall be jointly and severally liable for all debts until the whole amount of the capital stock fixed and limited by charter or by vote of the company in pursuance of the charter or of law shall have been paid in and a certificate made and recorded and requiring certain of the officers and the directors within ten days after payment of the last instalment of the capital stock fixed by charter or by vote of the company in pursuance of the charter or of law to make a certificate stating the amount of the capital so fixed and paid in, and requiring like proceedings in case of the increase of the stock as to the amount added and paid in and

making any of said officers and directors refusing or neglecting to perform their required duties jointly and severally liable for all debts contracted after the expiration of said ten days and before such certificate is filed, provide the same proceedings in case of an increase of stock as in case of original capital "fixed and limited," and it must appear in both cases that the capital or the increase has been "fixed and limited by the charter or by vote of the company" and that the last instalment has been paid before the officers can make the certificate and until such time and until the certificate is duly made the liability rests upon the stockholders under the provisions of Section 1 and not upon the officers and directors under Sections 2 and 3.

*(2)   Stockholders Liability.*

One seeking to enforce the liability of corporate officers under a statute must allege and prove affirmatively every fact, default or contingency upon which his right to recover depends so as to bring himself clearly within the statute.

*(3)   Corporations.   Stockholders Liability.*

Gen. Laws, 1896, cap. 180, §§ 1, 3, provide that until the whole amount of capital stock fixed and limited has been paid in and certificate duly filed the members of every incorporated manufacturing company shall be jointly and severally liable for all debts; that after all fixed capital stock or increase has been paid in, the officers shall make a certificate to that effect exonerating the stockholders from liability and that the officers shall be liable after ten days after the payment of the last installment, for all debts contracted thereafter, for their failure to file such certificate, and by Section 15, provides that the whole amount of the debts which any incorporated manufacturing company shall at any time owe shall not exceed the amount of its capital stock actually paid in and in case of any excess the directors under whose administration it shall happen shall be jointly and severally liable to the extent of such excess for all debts then existing and for all contracted as long as they shall continue in office, and until the debts shall be reduced to the amount of the capital stock of such company paid in:—

*Held,* that the scope of the statute was to make the capital stock paid in a fund for the payment of creditors and directors incurring debts in excess of such capital stock paid in were liable to the extent of such excess, until the debts were reduced to the amount of the capital stock paid in.   This liability is in the nature of the liability of sureties and the statute is subject to a strict construction and the directors incurring debts in excess of the stock paid in are not exonerated from liability by the fact that the corporation goes into bankruptcy, and that its trustee in liquidation of its affairs and before suit was brought paid to the creditors sums sufficient to reduce its indebtedness below the amount of paid in capital stock.

ACTION ON THE CASE.   Heard on exceptions of plaintiff and sustained.

PARKHURST, J.   This is an action on the case brought by the plaintiff, a creditor of the Pawtucket Steam and Gas

Pipe Company, a Rhode Island corporation created by special act of the General Assembly, to enforce certain statutory liabilities alleged to have been incurred by the defendant as a director of said company, under the provisions of Pub. Stat. R. I. 1882, cap. 155, later re-enacted as Gen. Laws, R. I. 1896, cap. 180.

The declaration contains three counts, but the second, since abandoned by the plaintiff, need not be considered.

In the first count the plaintiff attempts to set forth a case within that portion of the statute imposing a penalty upon directors for failure to make and file a certificate, stating the amount of capital stock added and paid in within ten days after the payment of the last instalment of the increase thereof. To this count, the defendant demurred, contending that the plaintiff had not stated a case within the terms of the statute.

The third count seeks to impose upon the defendant a director's liability under the statute on the ground that the total indebtedness of the company was allowed to exceed the amount of its capital stock actually paid in, while the defendant was one of its directors. To this count the defendant pleaded the general issue and also filed a special plea stating that prior to the commencement of this suit the debts of the company had been reduced below the amount of the capital stock paid in, by the payment of certain dividends in bankruptcy. To this special plea, the plaintiff demurred.

Both demurrers, that of the defendant to the first count and that of the plaintiff to the special plea to the third count, were decided on February 15, 1910, in favor of the defendant, and these rulings were duly excepted to. Subsequently, on October 20, 1910, the case was heard on its merits before a judge of the Superior Court and a jury, the defendant admitting for the purpose of the suit substantially all the allegations of the third count, including that of excess of indebtedness over paid in capital stock, and that as to the amount of the debt which it was sought to recover. This debt was admitted by the defendant and proved by the

plaintiff to be $1,154.28, with interest thereon from June 13, 1907. The only defence claimed was that set up under the special plea to the third count.

Upon motion of the defendant, the jury was directed to return a verdict of not guilty in favor of the defendant, and thereupon the plaintiff preferred its bill of exceptions on which the case is now before this court.

The bill contains six exceptions, which will be more fully set forth hereinafter. The first two are to the rulings sustaining the defendant's demurrer to the first count of the declaration, and overruling the plaintiff's demurrer to the special plea to the third count. The other rulings excepted to relate to testimony excluded or admitted in accord with the rulings on the demurrers and to the direction of a verdict for defendant.

The first exception was to the decision sustaining the demurrer to the first count. The provisions of the statute under which it is sought to charge the defendant with liability in the first count are as follows: Pub. Stat. 1882, cap. 155, §§ 1, 2, 3; Gen. Laws, 1896, cap. 180, §§ 1, 2, 3:

"Section 1. The members of every incorporated manufacturing company shall be jointly and severally liable for all debts and contracts made and entered into by such company, except as hereinafter provided, until the whole amount of the capital stock fixed and limited by the charter of said company, or by vote of the company in pursuance of the charter or of law, shall have been paid in and a certificate thereof shall have been made and recorded in a book kept for that purpose, in the office of the town clerk of the town wherein the manufactory is established, and no longer, except as hereinafter provided.

"Sec. 2. The president and directors, with the treasurer and clerk of such company, within ten days after the payment of the last instalment of the capital stock fixed and limited by the charter or by vote of the company, in pursuance of the charter or of law, shall make a certificate stating the amount of the capital so fixed and paid in, which

certificate shall be signed and sworn to by the president, treasurer and clerk and by a majority of the directors, and they shall, within said ten days, lodge the same to be recorded in the book kept as aforesaid in the office of the town clerk of the town wherein the manufactory shall be established. In case of increase of the capital stock of said companies, like proceedings shall be had as to the amount added and paid in.

"Sec. 3. If any of said officers shall refuse or neglect to perform the duties required of them as aforesaid, they shall be jointly and severally liable for all debts of the company contracted after the expiration of said ten days and before such certificate shall be recorded as aforesaid."

That part of the first count based on this statute, with which the demurrer is concerned, reads: "And the plaintiff avers that the said Company was duly incorporated on the 20th day of June, A. D. 1890, by the General Assembly of the State of Rhode Island, &c., and became subject to the provisions of Chapters 152 and 155 of the Public Statutes of said State, the capital stock thereof not to exceed $100,000.00, to be fixed by a vote of the Company from time to time, and thereupon the Company was duly organized and thereafterwards, on, to wit, the 1st day of September, A. D. 1891, by vote of the Company, the capital stock was fixed at $50,000.00 and on, to wit, the 2nd day of March, A. D. 1904, by vote of the said General Assembly the Company was authorized to increase its capital stock to an amount not exceeding in the aggregate $150,000.00, and to issue said increase, to wit, $50,000,00 as first preferred seven per cent. stock. And said Company actually increased the capital stock thereof, and prior to the first day of December, A. D. 1905, issued capital stock in the sum of $10,727.00 as first preferred seven per cent. stock in addition to the amount of capital stock theretofore issued and paid in, and the president and directors, with the treasurer and clerk of said Company, did not within ten days after the payment of the last instalment of said increase of said capital stock as aforesaid

make a certificate stating the amount of the capital stock so added and paid in, signed and sworn to by the president, treasurer and clerk, and by a majority of the directors, and did not within said ten days lodge the same to be recorded in the book kept for that purpose in the office of the city clerk of said Pawtucket, wherein the manufactory of said Company is established."

The grounds assigned for demurrer to this count are:

"(1)   It does not appear from said declaration that payment of the last instalment of the increase of the capital stock of the Pawtucket Steam & Gas Pipe Company, as authorized by an act of the General Assembly, entitled 'An Act Authorizing the Pawtucket Steam & Gas Pipe Company to increase its capital stock,' passed March 2, 1904, had been made:

"(2)   It does not appear that the debt owing by the Pawtucket Steam & Gas Pipe Company was contracted at the expiration of ten days or thereafter, after the payment of the last instalment of the increase of the capital stock of the Pawtucket Steam & Gas Pipe Company, as authorized by vote of the General Assembly on March 2, 1904.

"(3)   It does not appear from the said declaration that the duty ever devolved upon the defendant to file the certificate provided for by Chapter 180, Section 2 of the General Laws of the State of Rhode Island."

At the hearing of the demurrer two questions were in issue: First, whether the first count is defective in not alleging payment of the entire increased capital. Second, whether, irrespective of the above question, the first count is defective in not alleging payment of any part of the increased capital; and generally in not stating a case within the statute.

This court is of opinion that the demurrer to the first count was properly sustained. This count states that the capital stock was originally fixed by vote of the corporation, September 1, 1891, at $50,000; but it does not state whether

or not said stock to that amount was ever actually issued or ever actually paid for or whether or not any certificate of such payment was ever made. It further states authority from the General Assembly in 1904 for an increase of $50,000 in preferred stock; but it does not show that any definite increase under this last authority was ever fixed and limited by vote of the company; it simply states that the company actually increased its capital stock and issued $10,727 first preferred stock; it does not state that this last issue of stock was ever paid for. The count is fatally defective in these particulars, and clearly fails to state a case of liability against a director under Sections 2, 3, above quoted. There is nothing to show that the duty ever devolved upon the officers of the company to file any certificate as provided in the said sections. The statute plainly and clearly provides the .same proceedings in case of an increase of stock as in case of original capital "fixed and limited." It must appear in both cases that the capital or the increase has been "fixed and limited by the charter or by vote of the company," and that the last instalment has been paid, before the officers can make the certificate. Until such time and until the certificate is duly made, the liability for all debts and contracts rests upon the stockholders under Section 1, above quoted.

(2)     The law is well settled that a party who seeks to enforce the liability of corporate officers under a statute must allege and prove affirmatively every fact, default, or contingency upon which his right to recover depends, so as to bring himself clearly within the statute. *The Nassau Bank* v. *Brown*, 30 N. J. Eq. 478; *Continental National Bank* v. *Buford*, 107 Fed. 188, 189; *Merchants' Bank* v. *Stevenson*, 5 Allen (Mass.) 398, 403; *Chambers* v. *Lewis*, 28 N. Y. 454; *Whitney* v. *Cammann*, 137 N. Y. 342; *Anfenger* v. *Anzeiger Pub. Co.*, 9 Colo. 377 and cases *infra;* 15 Encyc. Plead. & Prac. 76; 2 Thompson on Corporations, §§ 1346, 1798.

The plaintiff's first exception is therefore overruled.

(3)     The plaintiff's second exception was to the decision over-

ruling the demurrer to the second plea to the third count. The provision of the statute under which it is sought to charge the defendant with liability in the third count is as follows: Pub. Stat. 1882, cap. 155, § 15; Gen. Laws, 1896, cap. 180, § 15: "The whole amount of the debts which any such corporation shall at any time owe shall not exceed the amount of its capital stock actually paid in; and in case of any excess, the directors under whose administration it shall happen shall be jointly and severally liable, to the extent of such excess, for all the debts of the company then existing and for all that shall be contracted as long as they shall respectively continue in office, and until the debts shall be reduced to the amount of the capital stock of such company paid in."

In the third count of the declaration the following facts are alleged: That the Pawtucket Steam & Gas Pipe Company, a Rhode Island corporation, on the 13th day of April, 1907, being indebted to the plaintiff in the sum of $1,778.51 for goods sold and delivered, in consideration thereof, promised to pay it said sum on request, which sum, though often requested, said company has yet refused to pay. Said company was duly incorporated June 20, 1890, by the General Assembly of the State of Rhode Island, and became subject to the provisions of Chapters 152 and 155 of the Public Statutes (1882), of said State, and was duly organized. And that on May 4, 1907, the amount of the capital stock of said company actually paid in was not more than $60,727.00, and the total debts of said company at said time were not less than $65,528.02, said amount being in excess of the capital stock actually paid in to the amount of not less than $2,101.00. That the defendant was one of the directors of said company under whose administration the said company became so indebted in excess of the amount of the capital stock paid in as aforesaid. That the debt of said company to the plaintiff was owing to the plaintiff on May 4, 1907, and was existing when the said company became indebted in said amount in excess of the amount of

the capital stock paid in as aforesaid, and during the time that the defendant was a director as aforesaid, and at no time thereafter were the debts of said company reduced to the amount of the capital stock paid in. That the defendant was not absent at the time of the contracting of the debt in excess of the amount of the capital stock paid in, as aforesaid, and that he did not object thereto, and did not give notice of the fact to the stockholders at a meeting held for that purpose, and that no meeting was called for that purpose. Wherefore, under the statute, he became liable to pay to the plaintiff the aforesaid debt of said company to the plaintiff, which sum though often requested, the defendant refused to pay, to the damage of the plaintiff, $2,000.

To this count the defendant filed, besides the plea of the general issue, a special plea, the statements of which are substantially as follows: that after said time, when, as alleged in the plaintiff's declaration, the total amount of the debts of the Pawtucket Steam & Gas Pipe Company exceeded the paid-in capital stock, but long prior to the commencement of this action, said company was adjudged a bankrupt and its assets turned over to James Brennan as trustee in bankruptcy; that said trustee paid to the creditors of said company dividends amounting to $20,000, which were accepted by said creditors as part satisfaction of their claim against said company, thereby reducing the total indebtedness of the said company below the amount of capital stock paid in; that at the time this action was commenced, the debts of said company had been reduced below the amount of the capital stock of said company paid in; and prayed judgment, etc.

The plaintiff demurred to this plea and the demurrer was overruled, and to this decision plaintiff duly excepted. We think this decision was error. This decision proceeds upon the theory, that, under such circumstances as are set forth in the third count, although the directors have incurred debts to an amount in excess of "the amount of the capital stock actually paid in," in violation of the terms of Section

15, above quoted, yet, if the corporation later goes into bankruptcy and its trustee, in liquidation of its affairs and before suit is brought, pays to the creditors sums sufficient to reduce its indebtedness to the amount of paid in capital stock, the directors are exonerated from liability.

It is apparent from a perusal of the sections of the statute above quoted that (Section 1) it was the intention of the General Assembly, that until the whole amount of capital stock fixed and limited, etc., has been paid in and certificate duly filed, the members of every incorporated manufacturing company should be jointly and severally liable for all debts and contracts; that after all fixed capital stock or increase had been paid in (Section 2) the officers should make a certificate to that effect, which would exonerate the stockholders from their liability (under Section 1); and (Section 3) that the officers should be liable after ten days for their failure to file the certificate. And by Section 15, above quoted, the directors are made liable for excess of debts, etc. It is manifest from a consideration of these provisions that the broad intent and scope of them is to make the capital stock paid in a fund for the payment of creditors; and that whenever the directors incur debts in excess of said capital stock paid in, the directors are subjected to a joint and several liability, to the extent of the excess, for all the debts of the company, until the debts shall be reduced to the amount of the capital stock paid in. This liability of the directors is in the nature of the liability of sureties, and as such is held to be *stricti juris;* and the statute imposing it is subject to a strict construction. As was said in the case of *Slater v. Taylor*, 241 Ill. 102, at 108, where the court was considering a similar statute: "The statute fixes a point where the directors become liable, and that point is where the indebtedness exceeds the amount of the capital stock. The liability is that of a surety, and if payment is made out of the assets, the officers and directors, who are sureties, are exonerated." And see, also, *Woolverton v. Taylor*, 132 Ill. 197; *Lewis v. Montgomery*, 145 Ill. 30. Counsel for defendant

cites *Slater* v. *Taylor,* 146 Ill. App. 97, and also the same case on appeal (*supra*) apparently to support his contention that payment out of the assets, by an assignee in bankruptcy, whereby debts are reduced below the amount of the paid in capital stock, exonerates the directors from liability; but a careful reading of that case and of the Illinois cases cited therein shows that when payment of debts out of assets is referred to, the court had in mind cases where corporations with a limited amount of paid in capital had an excess of assets beyond the amount of the paid in capital stock; so that while in those cases, directors might become liable for excess of debts, if the excess were paid out of surplus assets; the directors would cease to be liable. In all of these cases the corporations had become insolvent, and in none of them was it suggested that payment by the assignee after insolvency would exonerate the directors.

See, also, *Tradesman Publishing Co.* v. *Car Wheel Co.,* 95 Tenn. 634, 655, *et seq.: Moore* v. *Lent,* 81 Cal. 502. It may be noted that these cases are all in equity, in the nature of general creditors' bills, and are required to be brought in equity under the construction of the peculiar statutes of the states referred to or under express provisions thereof. We have cited them only to show the general principles applicable to directors' liability, and to refute the apparent claim, albeit somewhat vaguely made by defendant's counsel, that they support his main contention.

Only two cases from courts of last resort directly considering the question here involved have been cited on the briefs before us. In the case of *Merchants' Bank* v. *Stevenson,* 10 Gray, 232, a suit at law was brought against directors of a manufacturing corporation to enforce directors' liability for excess of debts over amount of capital stock actually paid in, under Mass. Rev. Sts. c. 38, § 25, which is almost word for word identical with our statute here under consideration. Demurrer to the declaration was upon two grounds: first, that it appeared from the declaration and stipulated facts that, although the debts had exceeded the paid in capital

at the time when the debt in suit was contracted and at the time of the proceedings in insolvency, the whole amount of the debts had been, before suit was brought, reduced, by the payment by assignees of preferred debts and dividends, to less than the amount of such paid in capital stock; the second ground of demurrer was in effect that suit at law could not be maintained, but remedy was only in equity. The decision was by Chief Justice Shaw and substantially overruled the first demurrer, as follows: "The reduction of the debts within the capital stock by dividends and payments by the assignees" (in insolvency) "was *not* such a reduction, within the meaning of the statute, as to exempt the defendants from liability." The decision then goes on to show that the suit should have been brought in equity under the subsequent provisions of the statute, and sustained the demurrer on that ground. The suit was subsequently brought in equity for the same claim, and the bill was demurred to and demurrer sustained on the ground that it did not clearly state that the excess of debts happened during the administration of the corporation by the defendants; *Merchants' Bank* v. *Stevenson*, 5 Allen, 398. The question as to effect of payments by the assignees in insolvency was not again raised in the equity case. Later in the same case (7 Allen 489) leave to amend the bill to cure the defect shown by the demurrer was asked and refused on the ground of laches, since the complainant had allowed so much time to elapse before seeking to amend the bill; and it was dismissed. It cannot fairly be said that the decision of Chief Justice Shaw was *obiter dictum*. The question was raised by the first demurrer, was argued on the brief of counsel and was a fair question in the case. This demurrer was overruled (although counsel seems to treat it as if sustained with other demurrers); and the mere fact that other demurrers were sustained does not remove the question properly raised by the first demurrer from the case.

The only case cited and relied upon in the case at bar by the justice of the Superior Court in his decision overruling

this demurrer is the case of *Flint* v. *Boston Woven Hose and Rubber Co.*, 183 Mass. 114.   This case was decided in 1903 under the Public Statutes of Massachusetts, 1882, Chapter 106, Section 60, which, so far as is material, reads as follows: "The officers of any corporation which is subject to this chapter, shall be jointly and severally liable for its debts and contracts in the following cases, and not otherwise   .   .   . When the debts of a corporation exceed its capital, to the extent of such excess *existing at the time of the commencement of the suit* against the corporation upon the judgment upon which the suit in equity to enforce such liability is brought as hereinafter provided."   Judge Lathrop, referring to the above quoted words of Judge Shaw, says the remark of the Chief Justice (in the *Merchants' Bank* case) "was not necessary to the decision, which sustained the defendant's demurrers on another ground, and the proposition appears in the head note prefixed by the words, 'It seems that.' "

A careful reading of the *Merchants' Bank* case shows that the first demurrer was overruled and that the other demurrers were sustained, as above shown; and the first demurrer raised the exact question raised in this case.   Furthermore, the question was decided by the Chief Justice without using the prefatory words, "It seems that," which words were interpolated in the head note by the reporter.   It is further to be noted that Judge Lathrop, in his opinion, after quoting the statute under which Judge Shaw made his decision, says, p. 116:   "We do not deem it necessary in this case to determine whether the remark of Chief Justice Shaw above cited was an *obiter* remark or a decision.   The statute which he was then considering differs essentially from the one before us.   Instead of the complicated provisions of the Revised Statutes, the statute before us fixes a single date, namely, when the suit is brought on which judgment is recovered. If the debts on that day exceed the capital stock, there is liability, otherwise not.   .   .   .   'The Legislature saw fit to use plain words, which we must take plainly as we find them.'   The provisions of the Public Statutes do not pro-

hibit a corporation from incurring an indebtedness in excess of its capital, but merely provide that if such an excess exists when a suit is brought, the president and directors shall be liable."

We do not regard the decision of Judge Shaw in the *Stevenson* case as *obiter dictum;* nor do we regard it as overruled in the *Flint* case, as claimed by the defendant's counsel. It is expressly saved, as shown by the above extract, as relating to a statute, essentially different from the one considered in the *Flint* case, but essentially the same as our statute now under consideration.

We are entirely in accord with the decision of Chief Justice Shaw in the *Stevenson* case, 10 Gray, 232 (*supra*) after mature consideration. As we have endeavored to show herein, the capital stock paid in is under the policy of our law, as under similar laws of other states above referred to, and generally, regarded as a fund for the security of creditors; it is the duty of the directors to keep it intact for such security, and they are expressly made liable for their acts in exceeding the debt limit; and their liability is in the nature of a surety fund for the protection of creditors in the event of such excess. If we should construe the law as contended by the defendant it would be possible for the directors by their careless or reckless management of a corporation in incurring debts beyond the limit, to bring about the insolvency or bankruptcy of the corporation, and then, having put the property into the hands of assignees, to exonerate themselves from liability by showing that the assignees, far from paying the debts, incurred under the management of the directors, in full, have been able in the course of liquidation, to pay just enough so that the total unpaid debt falls below the limit of the paid in capital, while exhausting the very fund which it was the duty of the directors to preserve for the security of creditors; it is our opinion that such a construction is quite contrary to the general scope and intent of the law, and we have found no case under a statute like our own which so holds. Such a construction would, we

think, be quite contrary to the plain purpose and intent of the law, and would deprive the creditors of the very security which the law intends to give them.

Under a statute of Pennsylvania practically identical with ours, the liability of directors to make good the excess of indebtedness over the amount of paid in capital stock was quite carefully considered in the case of *Margarge & Green Co.* v. *Ziegler,* 9 Pa. Superior Ct. 438. After reciting the statute the court (p. 442) goes on to say: "The assets of a corporation are represented by its capital stock, and their value presumably equals the amount of the stock issued. The evident purpose of the section quoted is· to forbid a corporate indebtedness greater than can be met with the assets, and to enforce the prohibition by making the directors who contract such indebtedness individually liable for the excess. In the present case, the directors, having contracted an indebtedness of $27,000 in excess of the capital stock, became to this extent personally liable.

"An answer in equity, presenting affirmative matter of defence, must set forth everything necessary to such a defence; what is not averred or necessarily implied is taken not to exist. Here it does not appear, by either averment or implication, that the directors have paid the whole amount of the excess of indebtedness which they unlawfully contracted, and for which they incurred a personal liability. Such implication as arises is to the contrary. Before the plaintiff's claim matured, the directors confessed judgments against the corporation, on which executions were issued and all the corporate property sold. Except that the proceeds of this sale were insufficient to pay the judgments, their amount is not stated. From all that appears in the case, it might be inferred that the directors have taken credit for this amount as a reduction of the corporate indebtedness for which they were liable, and have paid only enough more to reduce the indebtedness within the lawful limit. We cannot regard such an application of the corporate assets as within the spirit and purpose of the statute. By such a

process, instead of payment by the directors of the unlawful excess for which they were liable, the assets of the corporation are made to pay the debt which the statute places on the directors, and this to the extent of their total exhaustion. The insolvency of a corporation does not necessarily work its dissolution, yet when left without the means of continuing its business, it is practically lifeless.   An application of its property which, in effect, extinguished the corporation, cannot be viewed as a reduction of its indebtedness in relief of the liability of the directors for the indebtedness unlawfully contracted.   When it does not appear that the directors have, by payment of the unlawful excess, become discharged from further liability, they must be deemed still responsible for the debt which they contracted to the plaintiff."

We think the principle of this decision is quite applicable to the case at bar.   In the case cited the debts were reduced by the sale of the entire corporate property on execution upon judgments confessed by the directors.   In the case at bar the entire corporate property was sold by the trustee in bankruptcy, and paid in dividends to creditors in part payment of debts.   We are unable to see that the directors are entitled in either case to have credit for the sums so realized as against the excess of debts unlawfully contracted.   (See, also, *Miller Paper Co.* v. *York Paper Co.*, 34 Pa. Superior Ct. 315, 322.)

For the reasons above set forth the plaintiff's second exception is sustained.

It follows that the plaintiff's exceptions 3 to 6, inclusive, should be sustained.   Exception 3 (tr. pp. 3–5) relates to exclusion of testimony of Henry E. Tiepke as to the indebtedness of the Pawtucket Steam & Gas Pipe Co., on May 4, 1907, in excess of capital stock actually paid in; in our view of the case the testimony was pertinent and should have been admitted.   Exceptions 4 and 5 were to rulings admitting testimony of Wm. P. Cross, clerk of the U. S. District Court, showing amount of dividends in bankruptcy paid to creditors; (tr. pp. 7–9) in our view this testimony was immaterial and

should have been excluded. Exception 6 was to the direction of verdict for the defendant; under our view of the case, such direction of verdict was error; and the only ground of such direction was upon the erroneous decision of the Presiding Justice in overruling the plaintiff's demurrer to the second plea to the third count of the declaration (exception 2) as above set forth.

The first exception is overruled; exceptions 2 to 6, inclusive, are sustained. And as the record contains full and explicit proof of the exact amount of the indebtedness and of the excess thereof over the amount of the paid in capital stock, showing the liability of the defendant as a director as set forth in the third count of the declaration; and also undisputed proof that the debt due the plaintiff was the sum of $1,154.28 with interest from June 13, 1907, we are of the opinion that this case does not need a new trial, but that the verdict which was directed for the defendant should be set aside and that the case should be remitted to the Superior Court with direction to enter judgment for the plaintiff for the sum of $1,154.28 with interest from June 13, 1907, at six per cent. per annum and for costs.

The defendant may show cause, if any he has, why this order should not be made, on June 30th, 1913, at 10 o'clock in the forenoon.

*Henry E. Tiepke, Henry M. Boss, Jr., Louis W. Dunn*, for plaintiff.

*William A. Spicer, Jr., Frank H. Swan, Edwards & Angell*, for defendant.