## WILLIAM H. HASKELL MFG. CO. v. UNITED STATES.

### Civ. No. 708.

United States District Court
D. Rhode Island.

Jan. 27, 1950.

Matthew W. Goring, Providence, R. I., for plaintiff.

George F. Troy, United States Attorney, Providence, R. I., for defendant.

HARTIGAN, District Judge.

This is an action for refund of undistributed profits surtax paid for the years 1936 and 1937 in the sum of $14,223.03, with interest thereon from the date of payment. The taxes were paid under the Revenue Act of 1936, C. 690, 49 Stat. 1648, Sec. 14, 26 U.S.C.A.Int.Rev.Acts, page 823.

The parties filed a second amended stipulation which is as follows:

"It Is Stipulated And Agreed by and between the parties hereto by their respective counsel of record that the following facts are taken to be true, subject, however, with respect to Paragraphs 12, 13, 14 and 18, to any and all objections as to relevancy which may be urged by the plaintiff:

"1. This action arises under the Internal Revenue Laws of the United States, more particularly the Revenue Act of 1936 as amended by the Revenue Act of 1942 and jurisdiction is conferred on this court by Section 24, paragraphs 5 and 20, of the Judicial Code as amended (28 U.S.C. Section 41(5) and (20) [now § 1346] ).

"2. The taxpayer was at all times involved in this action and is now a corporation organized and existing under the laws of the State of Rhode Island.

"3. The taxpayer did duly file income and excess-profits tax returns for the calendar years 1936 and 1937 on or before March 15, 1937 and 1938 respectively, and duly paid the amount of $2,578.67 with respect to 1936 and $26,410.57 with respect to 1937, these amounts being the amounts of taxes computed in accordance with said returns.

"4. For the year 1936 the taxpayer reported no surtax due on $20,026.48 in undistributed net income on the ground that it was entitled to a credit under the law be-

cause it was restricted from paying dividends by a contract entered into prior to 1936. The Commissioner of Internal Revenue, after audit and review, however, determined that the taxpayer was not restricted by such a contract and assessed surtax of $3,539.50 for that year, and the taxpayer paid that amount together with interest of $467.12 on May 27, 1939.

"5. For the year 1937 the taxpayer reported as net income for the surtax computations on undistributed net income (after allowing for the normal income tax due) the sum of $90,523.42. From this sum it deducted $25,025 as a credit for dividends distributed during the year, resulting in undistributed profits of $65,498.42. On this it computed a surtax due of $11,800.55, which it paid during 1938. The Commissioner then made certain minor adjustments increasing the undistributed net income to $65,581.72 and the surtax thereon to $11,-817.61. The taxpayer then paid the $17.06 difference together with $14.70 in additional income taxes and $2.29 in interest on both sums (of which $1.23 is attributable to the surtax) on May 27, 1939.

"6. All of the foregoing payments referred to in the preceding paragraphs were paid to Joseph V. Broderick, then Collector of Internal Revenue for the District of Rhode Island, now deceased.

"7. On or about October 18, 1943 the taxpayer filed claims for refund of income taxes paid for the year 1936 and 1937 in the amount of $3,526.11 and $10,696.92 respectively plus interest on such amounts, which claims were denied by the Commissioner of Internal Revenue on November 28, 1944 by a letter sent the taxpayer by registered mail. The copies of the refund claims herein mentioned attached to the complaint in this action are true copies of the original claims on file with the Commissioner of Internal Revenue.

"8. The taxpayer's adjusted net income of computation of surtax on undistributed net income for 1936 was $20,116.09.

"9. The taxpayer's adjusted net income for computation of surtax on undistributed net income for 1937 was $90,606.72, and after giving effect to a dividend distribution of $25,025 its remaining undistributed net income subject to surtax was $65,581.72.

"10. As of December 31, 1935 the taxpayer had a deficit in its earned surplus account of $67,787.84. At the same time it had a surplus arising from other than ordinary earnings of $11,334.55 (capital surplus). Thus the deficit in the entire surplus account on that date was $56,453.29, and the taxpayer's capital was impaired by that amount.

"11. After giving effect to 1936 earnings and allowing for taxes, on December 31, 1936 the taxpayer's deficit in its earned surplus account was reduced to $52,467.32. And its capital surplus remained the same. This left a net deficit in the entire surplus account on that day of $41,132.77, and the taxpayer's capital was impaired by that amount.

"12. During 1936 the taxpayer acquired 313 shares of its stock having a par value of $31,300, for $6,435, which it carried on its books at the purchase price pending the vote for reduction of capital stock and actual reduction and retirement. It lawfully retired these shares on February 19, 1937, decreasing its capital stock by $31,300 and increasing its capital surplus by $24,865, the difference between the $31,300 and the cost to it of the shares, namely, $6,435. On December 31, 1937 its books thus showed total capital surplus of $36,199.55.

"13. At the end of 1937 also the taxpayer applied its $90,606.72 in earnings, less the dividend of $25,025, to its earned surplus account and reduced its deficit in that account to $10,173.64.

"14. A summary of the taxpayer's capital and surplus accounts, taken from its income tax returns for 1936 and 1937 is as follows:

|  | Dec. 31, 1935 | Dec. 31, 1936 | Dec. 31, 1937 |
|---|---|---|---|
| Capital Stock | $755,800.00 | $755,800.00 | $724,500.00 |
| Surplus (Capital) | 11,334.55 | 11,334.55 | 36,199.55 |
| Surplus (Earned) | (—67,787.84) | (—52,467.32) | (—10,173.64) |
| Net or Total Surplus | (—56,453.29) | (—41,132.77) | 26,025.91 |

28

"15. The item of $26,410.57, referred to in paragraph 3 above, was paid in installments as follows:

| | |
|---|---|
| March 19, 1938 | $8,410.57 |
| June 17, 1938 | 6,000.00 |
| September 17, 1938 | 6,000.00 |
| December 17, 1938 | 6,000.00 |
| Total | $26,410.57 |

"16. The taxpayer's overpayment of surtax on undistributed net income (and of interest thereon) for 1936 was:

| | |
|---|---|
| Surtax (Paid May 27, 1939) | $3,539.50 |
| Interest (Paid May 27, 1939) | 467.12 |
| Total overpayment | $4,006.62 |

Interest on said overpayment should be computed from May 27, 1939.

"17. If, as it contends, taxpayer had a net deficit of $41,132.77 at December 31, 1936, allowable as a credit under Sec. 26 (c)(3) of the Revenue Act of 1936 (as amended [26 U.S.C.A. Int.Rev.Acts, page 344], its overpayment of surtax on undistributed net income (and of interest thereon) for 1937 was $9,021.82, viz:—

| | | | | |
|---|---|---|---|---|
| Adjusted Net Income | | | | $90,606.72 |
| Deduct | | | | |
| Dividends Paid Credit | | $25,025.00 | | |
| Deficit 12/31/1936—Sec. 26(c) (3) | | 41,132.77 | 66,157.77 | |
| Balance Undistributed Income | | | | $24,448.95 |
| Taxable | @ 7% | $9,060.67 | $ 634.25 | |
| " | @12% | 9,060.67 | 1,087.28 | |
| " | @17% | 6,327.61 | 1,075.49 | |
| Total Surtax | | | $ 2,797.02 | |
| Surtax and Interest Paid | | | 11,818.84 | |
| Overpayment | | | $ 9,021.82 | |

Interest on said overpayment should be computed from the following dates:
As to $2,988.40—From September 17, 1938
As to $6,000.00—From December 17, 1938
As to $ 33.42—From May 27, 1939.

"18. If, as the defendant contends, the deficit credit to which taxpayer was entitled for 1937 is $26,441.41 (i. e., deficit in its earned surplus account on 12/31/36 of $52,467.32, less excess of its capital surplus account on 12/31/37 ($36,199.55) over deficit in its earned surplus account on 12/31/37 ($10,173.64), taxpayer's overpayment of surtax on undistributed net income (and of interest thereon) for 1937 was $6,159.20, viz.:

| | | | | |
|---|---|---|---|---|
| Adjusted Net Income | | | | $90,606.72 |
| Deduct | | | | |
| Dividends Paid Credit | | $25,025.00 | | |
| Additional Credit-Sec. 26(c) (3) | | 26,441.41 | 51,466.41 | |
| Balance Undistributed Income | | | | $39,140.31 |
| Taxable | @ 7% | $ 9,060.67 | $ 634.25 | |
| " | @12% | 9,060.67 | 1,087.28 | |
| " | @17% | 18,121.34 | 3,080.63 | |
| " | @22% | 3,897.63 | 857.48 | |
| Total Surtax | | | $ 5,659.64 | |
| Surtax and Interest Paid | | | 11,818.84 | |
| Overpayment | | | $ 6,159.20 | |

Interest on said overpayments should be computed from the following dates:

As to $ 125.78—From September 17, 1938
As to $6,000.00—From December 17, 1938
As to $ 33.42—From May 27, 1939."

The government concedes that the taxpayer had a deficit in accumulated earnings and profits at the beginning of 1936 and was prohibited by a Rhode Island law from paying dividends during that entire year and that the taxpayer is entitled to the deficit credit for 1936. May 27, 1939, the taxpayer paid a surtax amounting to $3,-539.50 and interest amounting to $467.12 or a total overpayment of $4,006.62 upon which interest should be computed from the date of payment.

The question here is whether or not the taxpayer was prohibited by a provision of a Rhode Island law from paying any dividends during 1937.

The Rhode Island law dealing with dividends, in effect during 1937 is contained in Chap. 248, Sec. 41, General Laws of Rhode Island 1923.

"Sec. 41. The directors of a corporation shall not make dividends except from its surplus or net profits, nor divide, withdraw or in any way pay to the stockholders, or any of them, any part of the capital of such corporation, except in accordance with the provisions of section fifty-three hereof. In case of any intentional or negligent violation of the foregoing provisions of this section, the directors voting therefor shall be jointly and severally liable to the receiver, assignee or trustee in bankruptcy of such corporation in an action of the case brought within six years after such violation, to the full amount by which the capital is impaired by such dividend or to the full amount of capital so divided, withdrawn or paid out, with interest on the same from the time such liability accrued."

The General Laws of Rhode Island 1923, Title XXIV, c. 248, Sec. 53, as amended by the Public Laws of Rhode Island 1932, c. 1941, Sec. 3 provides in part:

"Clause B. Any corporation may reduce its capital at any time in the following manner:

* * * * * *

"2. * * * by the purchase of certain shares for retirement, or by retiring shares owned by the corporation, * * *."

And it then provides:

* * * * * *

"Any surplus created by a reduction of the capital of a corporation * * * shall, subject to the provisions of clause C hereof and of its charter or articles of association, constitute and thereafter be subject to disposition in all respects as surplus of the corporation; * * *."

"Clause C. Upon any reduction of the capital of a corporation no amount shall be withdrawn or applied to the redemption or purchase of shares or otherwise distributed if the corporation is, or would thereby be rendered, insolvent, or if the capital as reduced is, or would thereby be, impaired, or if the rights of the holders of any class of stock would thereby be violated. No reduction of capital under this section shall affect the liability of any stockholder theretofore accrued under the provisions of this chapter."

The Revenue Act of 1942, c. 619, 56 Stat. 798, Sec. 501(a) (2) provides in part as follows:

"§ 501. Additional Credits For Undistributed Profits Tax.

"(a) Amendments to the Revenue Act of 1936.

* * * * * *

"(2) Section 26(c) of the Revenue Act of 1936 (relating to credits of corporations) is amended by amending the heading to read as follows: '(c) *Restrictions on Payment of Dividends.*—'; and by amending paragraph (3) to read as follows:

"(3) *Deficit corporations.* In the case of a corporation having a deficit in accumulated earnings and profits as of the close of the preceding taxable year, the amount of such deficit, if the corporation is prohibited by a provision of a law or of any order of a public regulatory body from paying dividends during the existence of a deficit in accumulated earnings and profits, and if such provision was in effect prior to May 1, 1936.' * * *"

This statute has already been construed by the Supreme Court in U. S. v. Ogilvie

Hardware Co., 330 U.S. 709, at page 718, 67 S.Ct. 997, at page 1001, 91 L.Ed. 1192, and the court said: " * * * In this case the ultimate right to refund depends upon state law. Cf. Lyeth v. Hoey, 305 U.S. 188, 193, [59 S.Ct. 155, 158, 83 L.Ed. 119, 119 A.L.R. 410]. Before that right can be finally established, courts must examine state law at least to the extent of determining (1) what is a 'deficit'; (2) what are 'accumulated earnings and profits'; (3) what was the state law on these questions prior to May 1, 1936; (4) whether payments of dividends under these circumstances were prohibited by state law. * * * "

No definition of either "deficit" or "accumulated earnings and profits" by Rhode Island courts has been brought to my attention.

In Goldberg v. Peltier, R. I., 1949, 66 A. 2d 107, 109 the court said: " * * * the capital of a corporation is in the nature of a trust fund for the benefit of its creditors and for that reason it cannot lawfully be impaired. Cleveland v. Jencks Mfg. Co., 54 R.I. 218, 221, 171 A. 917, 918. * * * " See also J. L. Mott Iron Works v. Arnold, 35 R.I. 456, 87 A. 17, L.R.A.1915D, 1028; Baker v. Smith, 41 R.I. 17, 102 A. 721.

Said Sec. 41, supra, prohibits the making of dividends except "from its surplus or net profits" and creates liability in the directors for violation of this section.

The government in its brief concedes "that the taxpayer had a deficit in accumulated earnings and profits at the beginning of 1936 and was prohibited by Rhode Island law from paying dividends during that entire year, thus, the taxpayer is entitled to the deficit credit for 1936."

The plaintiff during 1937 had a surplus out of which it could have declared a dividend by virtue of the fact that it created a capital surplus item in the amount of $24,-865 when it retired 313 shares of its stock (par value of $31,300) which it had acquired for $6,435. The capital surplus on December 31, 1936 was $11,334.55 which added to the $24,865 created a total capital surplus of $36,199.55 as of December 31, 1937. See par. 12 of the stipulation.

The plaintiff argues that the words of the statute require the amount of the credit to be the deficit as it appeared "as of the close of the preceding taxable year." It, therefore, concludes that the credit should be determined as of December 31, 1936, when the deficit was $41,132.77.

To overlook the taxable year of 1937 on the facts here would force us to conclude that Congress intended to give the plaintiff a bonus instead of relief. Sec. 501 was designed to give relief to taxpayers "caught in a trap." The situation is clearly stated in U. S. v. Ogilvie Hardware Co., supra, 330 U.S. at page 717, 67 S.Ct. at page 1001, 91 L.Ed. 1192:

" * * * We think Congress was moved to relieve those corporations which it considered to be 'caught in a trap' whereby they were taxed by the Federal Government if they did not pay dividends and subject to prosecution and penalties by the Federal Government or the states if they did.

" * * * The language of this extraordinary relief measure and the circumstances which prompted its passage convince us that Congress intended to provide refunds to corporate taxpayers, with possible minor exception, who had paid undistributed profits taxes as a choice between conflicting state and federal compulsions."

The plaintiff has not convinced me that it was "caught in a trap" during the taxable year of 1937.

Under the facts appearing here, no court to my knowledge has adopted the construction argued for by the plaintiff. It seems to me that the courts have taken a realistic view and have considered the taxable year for which the taxpayer seeks relief. See United States v. Riely, 4 Cir., 169 F.2d 542, certiorari denied 335 U.S. 908, 69 S.Ct. 411, 93 L.Ed. 441; United States v. Byron Sash & Door Co., 6 Cir., 150 F.2d 44; Philadelphia Carpet Co. v. United States, D.C., 68 F. Supp. 712; and Dallas Oil & Refining Co. v. United States, D.C., 73 F.Supp. 286.

We agree with the plaintiff that the doctrine of "nimble dividends," at least, arguendo, is not applicable in Rhode Island; nevertheless, the Rhode Island statute did

not prohibit the declaration of a dividend in 1937, the capital not being impaired during that year.

The relevant portion of the Rhode Island statute, § 53, supra, allows a distribution from a surplus created by a reduction of capital where the capital is not impaired thereby.

█ The contention of the government is therefore sustained, namely, that the taxpayer must prove not merely that it had a deficit as of the close of 1936 but that by Rhode Island Law it was prohibited from paying dividends during the taxable year 1937 for which it seeks relief. Since the law of Rhode Island did not prohibit the paying of dividends during 1937, the plaintiff's claim for a credit in the full amount of $41,132.77 (the deficit as of December 31, 1936) is denied.

The government concedes that the plaintiff is entitled to refund of undistributed profits surtaxes paid for 1936. However, it is only entitled to a refund of a portion of the surtax paid for 1937, the amount of which the parties should stipulate.

Judgment may be entered in accordance with this opinion.