## Henry J. Edwards v. Armour Packing Company.

90    333
s190s 467

1. CORPORATIONS—*Liability of One Assuming to be an Officer or Agent.*—Where one assumes to act as an officer or agent of a corporation, and so assuming, directs the creation of a debt or liability, he is personally liable.

**Assumpsit,** under section 18 of the act concerning corporations. Appeal from the Superior Court of Cook County; the Hon. AXEL CHYTRAUS, Judge, presiding. Heard in this court at the March term, 1900. Affirmed. Opinion filed July 23, 1900.

A. W. MARTIN and EDWARD H. S. MARTIN, attorneys for appellant; HENRY W. PROUTY, of counsel.

E. C. MAPLEDORAM, attorney for appellee.

MR. PRESIDING JUSTICE ADAMS delivered the opinion of the court.

A certificate of the complete organization of the "Thompson & Edwards Fertilizer Company" was issued by the Secretary of State January 16, 1886. The certificate was never filed for record in the office of the recorder of deeds of Cook county, as required by section 4 of chapter 32 of

the Revised Statutes. The object for which the corporation was formed was " the manufacture and sale of commercial fertilizers." The following contract was entered into between the fertilizer company and appellee at the date mentioned in the contract:

"July 10th, 1897.

" Thompson & Edwards Fertilizer Co. of Chicago, Illinois, have bought of the Armour Packing Co. of Kansas City, Missouri, one hundred and fifty (150) tons of seller's usual make Underground Steam Bone Meal, at $14.75 per ton of 2,000 pounds, C. A. F., Chicago. Bags, six cents each, returnable at buyer's expense.

" Shipments to be made fifty (50) tons each, first and last half of August, and first half of September.

" Terms, buyer's option, sight draft with bill of lading attached, or ninety days' note from date of each shipment, bearing seven per cent per annum interest from date.

" In case of destruction by fire, of seller's works, this contract to be void; otherwise to be carried out in good faith.

" Accepted :            Armour Packing Company,
                                          Per Norton.

" Accepted :
                "Thompson & Edwards Fertilizer Co.,
                    " F. E. Barnard, Sec'y and Treas."

At the date of the contract H. W. Hoyt, A. L. Nestlerode, H. J. Edwards, the appellant, F. E. Barnard and John Hasse were the directors of the fertilizer company. The number of directors was fixed at five by a by-law of the company. H. J. Edwards was elected a director at a meeting of the stockholders held January 11, 1897. The capital stock of the company was $100,000, divided into shares of $100 each, and appellant was a subscriber for 475 shares. Hoyt was the president of the fertilizer company, Nestlerode its general manager and Barnard its secretary and treasurer. The contract of July 10, 1897, was performed by appellee, by the delivery to the fertilizer company of the material therein mentioned, and as evidence of the amount due to appellee five notes were executed to appellee in the name of the " Thompson & Edwards Fertilizer Co." as maker, signed " F. E. Barnard, Sec'y & Treas.," and coun-

tersigned, " A. L. Nestlerode, Gen'l Manager." Each note is payable to appellee's order ninety days after its date, with interest at the rate of seven per cent per annum after maturity. The notes are of the following dates and for the following amounts, respectively: August 2, 1897, $305; August 21, 1897, $452.06; August 28, 1897, $376.05; September 3, 1897, $376.81; September 20, 1897, $375.56. No part of any of the notes has been paid. The material mentioned in the contract was used by the fertilizer company in its business. The contested question is, whether the appellant participated in the creation of the liability of the Thompson & Edwards Fertilizer Company to appellee, in such manner as to make him liable under section 18 of chapter 32 of the statutes, which section is as follows :

" Sec. 18.   If any person or persons being, or pretending to be, an officer or agent, or board of directors, of any stock corporation, shall assume to exercise corporate powers, or use the name of any such corporation, or pretended corporation, without complying with the provisions of this act (or) before all stock named in the articles of incorporation shall be subscribed in good faith, then they shall be jointly and severally liable for all debts and liabilities made by them, and contracted in the name of such corporation, or pretended corporation."

The jury found that appellant did so participate, and the question is, whether such finding is so manifestly against the evidence that the judgment should be reversed.

Frank E. Barnard testified that, in the year 1897, appellant resided in Portland, Maine; that he came to Chicago about February 1, 1897, and remained in Chicago from four to six weeks, and that during that time he was at the office of the Thompson & Edwards Fertilizer Company at the Union Stock Yards, Chicago, almost daily, and that the officers who were then actively in charge of the business of the company, at its office, were Edwards, the appellant, Nestlerode and the witness himself.   Barnard further testified that appellant was in Chicago from time to time, giving Nestlerode and the witness advice and instructions as to the management and general running of the business,

buying supplies, etc., and that when he was in Chicago in February, 1897, a conversation occurred between appellant, Nestlerode and the witness; that he, the witness, stated to appellant that up to about two years previous to that time the fertilizer company had purchased nearly all the material (ground bone) from the Nelson Morris Company; that for the two years next previous to 1897, the company had also been purchasing from the Armour Packing Company, and had been getting from the latter company material of better quality than that furnished by the Nelson Morris Company. The witness said that Nestlerode, who was present, being practically new in the business, and not knowing much about the bone business, left the matter largely to appellant, and that appellant told him, the witness, to purchase from the Armour Packing Co., and let the Nelson Morris Co. go. The witness further stated that, prior to the time of the conversation referred to, the company had been purchasing nearly all the ground bone it used from appellee and the Nelson Morris Co.; also that every day that appellant was in Chicago the witness had conversations with him about the purchase of material for the company. On cross-examination the witness testified that appellant said that the material furnished by appellee was better than that furnished by the Nelson Morris Co., the terms better, and the price no higher, and that the material should be purchased from the appellee; that he, appellant, was glad to get rid of the Nelson Morris Co. anyway; that this was not the first time he, the witness, had talked with appellant regarding purchasing from the appellee; that he had talked with him about it in 1896 and, he thought, in 1895; that appellant was in Chicago on an average once a year; that sometimes he was in Chicago twice a year.

A. L. Nestlerode testified that in March, 1897, appellant told him to buy all kinds of material which make fertilizers, bone, tankage, blood and potash, and to purchase a sufficient quantity to meet the demand in the fall; also, that he, the witness, reported to appellant, by his request, concerning the business of the company prior to July 10, 1897,

and that he told appellant about the purchase in question from appellee.

The following occurred in the examination of Nestlerode:

"Q. What did he say to you, Mr. Nestlerode? A. When Mr. Edwards put me there, he requested me to make a report to him in full of all that we were doing, and everything that we were doing from time to time.

"Q. Did you do it? A. I did."

Appellant's counsel contends that the assent of appellant to the creation of the debt, such assent not having been given at a meeting of the board of directors, of which he was a member, would not render him liable under section 18 of the statute quoted *supra;* also that it does not appear from the evidence that he made or participated in making the debt. We think it unnecessary in the present case to pass on the question whether, under section 18, appellant could be held liable merely in his character as a director. If appellant assumed to act as an officer or agent of the corporation and, so assuming, directed the creation of the debt or liability in question, we are of opinion that he is liable. The evidence shows clearly that the matter of the purchase from appellee was left solely to appellant's judgment and decision, and that appellant directed the purchase to be made for and in the name of the corporation; also that while he was in Chicago he, with Nestlerode and Barnard, was actively in charge of the business of the company, and of these three appellant seems to have exercised the greatest control. The other two deferred to him. Appellant's counsel urges that the contract in question not having been made until about four months after appellant left Chicago in 1897, it can not reasonably be said that he participated in the creation of the liability to appellee. We think the interval of time between the conversation testified to by Barnard and the execution of the contract in question of comparatively little, if any, importance. It appears from the evidence that the custom of the fertilizer company was to purchase the bone material which it required for the fall trade in May, June and July, and appellant, who was an original stock-

holder, and also a director, must have known this, so that when he directed the purchase of the material from appellee, he must have known about the time the purchase would be made. We are of opinion that the evidence for appellee, the plaintiff below, was sufficient to warrant the jury in finding that appellant, assuming to act as the agent of or an officer of the Thompson & Edwards Fertilizer Co., directed and actively co-operated in the creation of the indebtedness of that company to appellee. The creation of the indebtedness was determined on by three directors, a majority of the board of directors, appellant being one of the three, and while, as before stated, we do not think it necessary to the decision of this case to pass on the question whether appellant can be held liable merely in his official character as director, we are by no means clear that he can not be so held. It is to be observed that if there had been a meeting of the board of directors of the fertilizer company, and Edwards, Nestlerode and appellant, a majority of the board, had by their votes directed the purchase of the material from appellee, their action in the premises would have been equally illegal as was their action in deciding outside of a board meeting that the purchase should be made; and the act of so deciding being equally illegal, whether the decision be at a formal meeting of the board or without such formal meeting, we fail to perceive much force in the objection of appellant's counsel that the action of appellant, Barnard and Nestlerode, who were all directors and a majority of the board, was not at a formal meeting of the board. The major premise of the argument of appellant's counsel in support of the proposition that directors can not be held liable as such for their acts, except the acts are performed at a meeting of the board, is the general rule that to bind the corporation the acts must be the acts of the board performed at a meeting of the board; but this rule applies only to the exercise of legal powers of the board, and not at all to the performance of illegal acts in respect to which there is, necessarily, no rule.

The theory of appellant's counsel is, that notwithstand-

ing the three directors mentioned, they being a majority of the board, may have actively co-operated in the purchase from appellee, yet they are not liable, because they acted without the formality of a board meeting. If such be the law, evasion of the statute by the directors of a corporation is a simple matter. All they have to do is to act in the premises, dispensing with the formality of a board meeting. It is not the province of courts to sanction evasions of the law.

Appellant offered no evidence, but at the close of the appellee's evidence moved the court to take the case from the jury, and presented an instruction to that effect, which instruction the court refused, properly, as we think.

It is assigned that the court erred in modifying certain instructions asked by appellant's attorney, and in refusing to give the fourth instruction asked by said attorney, but appellant's counsel does not, in his argument, complain of such modification or refusal; therefore the assignment of error in respect thereof must be deemed abandoned.

The judgment will be affirmed.