## GEORGE M. BAKER *vs.* EDWIN A. SMITH.

### JANUARY 16, 1918.

PRESENT: Parkhurst, C. J., Sweetland, Vincent, Baker, and Stearns, JJ.

*(1)   Officer's and Director's Liability.   Corporations.   Statute of Limitations.*

Gen. Laws, 1909, cap. 214, §§ 2, 3, 12, of the liability of officers and directors
of a corporation, is remedial in character and intended for the benefit of
creditors, and hence the bar of the statute of limitations imposed by Chapter
357, Section 8, providing that "All suits or prosecutions founded upon
any penal statute which are wholly or in part for the use of the prosecutor,
shall be brought within one year, and all other suits and prosecutions on
such statute within two years after the commission of the offence unless
otherwise specially provided," does not apply.

*(2)   Corporations.   "Charter."   Director's Liability.*

The word "charter" as used in Sections 1 and 2 and impliedly in Section 3 of
Chapter 214, Gen. Laws, 1909, relates to manufacturing corporations
whether created under the general corporation act or by special act of the
Legislature.

*(3)   Corporations.   Director's Liability.*

At a first meeting of a corporation, defendant with others was elected a
director "to hold office until the annual meeting to be held on the first
Tuesday in April, 1899." Preceding the election of defendant, by-laws
were adopted providing that "the officers of the corporation shall be elected
by the stockholders at the annual meeting and shall hold office for one year
or until their successors are duly elected." Defendant never resigned and
the corporation never thereafter held an annual meeting and in 1915 went
into bankruptcy. Other provisions of the by-laws invested the directors
with the full control of the affairs of the corporation. During its existence
the corporation transacted a large amount of business, declared large divi-
dends and paid large salaries. While the directors never met formally,
defendant with another person who had also been originally elected a
director, dictated the policy of the company and directed its affairs.

*Held,* that defendant was a director *de facto,* if not *de jure,* and as such director
he was liable to a creditor under Gen. Laws, cap. 214, § 12.

*(4)   Corporations.   Meetings of Directors.*

Formal meetings of directors are not necessary where their usual course of
business is to act informally.

TRESPASS ON THE CASE to enforce liability of defendant as
an officer and director of a corporation under Gen. Laws,
1909, cap. 214, §§ 2, 3, 12.

VINCENT, J.   This is an action of the case brought by the
plaintiff, a creditor of the Manchester Manufacturing Com-

2

pany, a corporation located in the city of Providence, against the defendant as the secretary, treasurer, and director of said company under the provisions of Sections 2, 3, and 12 of Chapter 214 of the General Laws of Rhode Island, 1909. These sections are as follows:

"Sec. 2.   The president and directors, with the treasurer and clerk of such company, within ten days after the payment of the last installment of the capital stock fixed and limited by the charter or by vote of the company, in pursuance of the charter or of law, shall make a certificate stating the amount of the capital so fixed and paid in, which certificate shall be signed and sworn to by the president, treasurer and clerk and by a majority of the directors, and they shall, within said ten days, lodge the same to be recorded in the book kept as aforesaid in the office of the town clerk of the town wherein the manufactory shall be established.   In case of increase of capital stock of said companies, like proceedings shall be had as to the amount added and paid in.

"Sec. 3.   If any of said officers shall refuse or neglect to perform the duties required of them as aforesaid, they shall be jointly and severally liable for all debts of the company contracted after the expiration of said ten days and before such certificate shall be recorded as aforesaid.   .   .   .

"Sec. 12.   The whole amount of the debts which any such corporation shall at any time owe shall not exceed the amount of its capital stock actually paid in; and in case of any excess, the directors under whose administration it shall happen   shall be jointly and severally liable, to the extent of such excess, for all the debts of the company then existing, and for all that shall be contracted as long as they shall respectively continue in office, and until the debts shall be reduced to the amount of the capital stock of such company paid in."

The declaration consists of five counts.   The first and second counts are based upon the liability of the defendant as a director of the company in allowing its indebtedness to exceed the amount of capital stock paid in;   the third count

upon the defendant's liability as secretary; the fourth count upon his liability as director; and the fifth count upon his liability as treasurer in failing to file a return in the city clerk's office in the city of Providence stating the amount of capital paid in.

The defendant filed three pleas: first, the general issue, second, setting up payment as to part of the claim and the general issue as to the rest, and third, the statute of limitations, Section 8, Chapter 357, General Laws of 1909. The plaintiff demurred to the third plea, the demurrer was sustained and the defendant's exception noted. Jury trial was waived and the case was tried in the Superior Court on April 30, 1917, and a decision rendered for the plaintiff in the sum of $37,190.47 with interest at six per cent. from the date of trial.

The defendant is now before this court upon his bill of exceptions: (1) to the decision of the Superior Court sustaining the plaintiff's demurrer to his third plea and (2) to the finding of that court in favor of the plaintiff for the sum of $37,190.47 with interest.

The chapter of our statute upon which the defendant relies in support of his first exception is entitled, "Of Fines, Penalties and Forfeitures," and Section 8 of that chapter provides that, "All suits or prosecutions founded upon any penal statute, which are wholly or in part for the use of the prosecutor, shall be brought within one year, and all other suits and prosecutions on such statute within two years after the commission of the offence unless otherwise specially provided."

The defendant claims that the plaintiff is barred by the statute aforesaid from any recovery respecting indebtedness incurred more than two years prior to May 22, 1915, the date of the plaintiff's writ. If this contention of the defendant is sound it would dispose of a large part of the plaintiff's claim.

Is the statute under which this suit is brought a penal statute subjecting the plaintiff to the limitations of Section 8 of Chapter 357?

To avoid personal liability is one of the main objects to be attained in transacting business under an act of incorporation. The legislature through the granting of the act endows the body corporate and incidentally its stockholders, officers and directors with certain immunities and privileges upon condition that such officers and directors will perform certain duties and comply with certain regulations imposed upon them by the statutes to which reference is made therein. Among the duties and regulations thus prescribed is the filing of a certificate stating the amount of the capital stock paid in and the limitation of the indebtedness which the corporation may incur. The purpose of the statute is to give to creditors, or to those who may desire to deal with the corporation, as far as may be, an opportunity to acquaint themselves with its financial standing and to preserve its capital for their benefit.

In *Mott Iron Works* v. *Arnold*, 35 R. I. 456, 469, this court said that, "the capital stock paid in is under the policy of our law, as under similar laws of other states, . . . and generally, regarded as a fund for the security of creditors; it is the duty of the directors to keep it intact for such security, and they are expressly made liable for their acts in exceeding the debt limit; and their liability is in the nature of a surety fund for the protection of creditors in the event of such excess." A failure to comply with the statute does not constitute a crime or a misdemeanor punishable by a fine, penalty, or forfeiture, it simply deprives the officers and directors of certain immunities and privileges through their failure to respect the conditions upon which the charter was granted and exposes them to civil liability which is designed for the protection of creditors and which may be enforced in an action of the case.

These principles have been variously expressed by this court, the courts of other jurisdictions, and by text writers. In *Starkweather & Shepley* v. *Brown*, 25 R. I. 142, this court said, in speaking of the liability of stockholders arising through a failure to file a certificate as required by statute,

"So long as the corporation observes certain conditions which are imposed by reference to general statutes, these stockholders may shield themselves under the corporate character and name. When they in their corporate character fail to fulfill these duties they may be pursued again as individuals."

(1)    If the statute in question is penal in character it is not penal in the same sense as a criminal statute is penal. The distinction is well expressed in 2 Thompson on Corporations, 2nd Ed., Section 1326, in the following language: "Whatever may be said of the penal nature of these statutes the cases are coming more and more to the proposition that they are not penal in the strict and proper sense applied to statutes imposing punishment for offences against the state. This term has evidently arisen from the supposition that a penalty is imposed. With reference to their nature and construction, the better, and undoubtedly the correct, rule is that they are penal as to their construction and remedial as respects the creditors." That such statutes are enforceable outside of the jurisdiction of their enactment is only consistent with their remedial object and character. In *Nickerson* v. *Wheeler*, 118 Mass. 295, the court said: "The liability of the parties to this suit to the creditors of the corporation is however one imposed by statute, and should be considered in reference to the statute. By accepting their positions as officers, they impliedly agreed that they would make and publish the annual certificate, and, failing this, that they would become responsible to the creditors of the corporation. While engaged therefore in a lawful business, they have been guilty of a neglect which has exposed them to this liability. It is a liability intended to secure the making of the proper certificates, by exposing the officers to a heavy responsibility; but when the provisions of the law have been sought to be enforced against the officers, they have not been construed with the strictness of a penal statute, but have been treated as remedial in their character and intended for the benefit of creditors."

Other cases might be cited to the same effect were further citations necessary. We think that the defendant's exception to the decision of the trial court sustaining the plaintiff's demurrer to the plea setting up the statute of limitations must be overruled.

(2) In approaching the consideration of the remaining exception of the defendant it may be noted that the charter of the Manchester Manufacturing Company was granted on December 1, 1898 and the first meeting of the incorporators was held on December 21, 1898. At that meeting the charter was accepted, by-laws were adopted, the incorporators, Edwin A. Smith, William H. Manchester and Henry C. Babcock, were elected directors, Mr. Manchester was elected president and the defendant, Edwin A. Smith, secretary and treasurer. These elections were held under the by-laws previously adopted and all the officers and directors above mentioned were elected "to hold office until the annual meeting to be held on the first Tuesday in April, A. D. 1899."

The provisions of the by-laws relating to the election and duties of these officers are as follows:

"Article I, Section 1. The annual meeting of the corporation for the election of officers and the transaction of any business connected with the corporation shall be held in the City of Providence on the First Tuesday in April in each and every year. . . .

"Article II, Section 1. The officers of the corporation shall be elected by the stockholders at the annual meeting and shall hold office for one year or until their successors are duly elected. The officers of the corporation shall consist of a President, Secretary and Treasurer, who may be one and the same person, and a board of Directors of not less than three. . . .

"Article VI, Sec. 1. The Board of Directors shall have full control of the affairs of the corporation, shall have power from time to time to employ agents defining their duties and powers, shall meet at least once in three months."

The corporation took over the business which had been previously carried on by Manchester and Smith as copartners. It will be observed that the management of the corporation was vested in the board of directors and not in the stockholders. This, however, is of little importance in the present case as the three directors comprised all of the stockholders. Mr. Babcock held ten shares of the capital stock of the company, evidently for the purpose of qualifying him as a director, which were paid for by the defendant, Smith, and practically belonged to him. Considering these shares as the property of Smith, it appears that he and Manchester were equally interested in the corporation to the extent of $15,000, each having paid in that sum in cash, which made $30,000, the amount of the capital authorized by the charter. These payments were made on January 1, 1899, but the certificate required by Section 2 of Chapter 214 was not filed in the office of the city clerk of Providence within ten days thereafter nor at any other time.

The corporation appears to have held but one meeting between the meeting for organization on December 21, 1898 and February 1, 1915, at which last mentioned date a meeting was held to consider the filing of a voluntary petition in bankruptcy. It was voted to file such petition and the record of such meeting was signed by Smith and Manchester. The intervening meeting was held some time in 1913 when a vote was passed regarding the assignment of some book accounts to the plaintiff, who was then a creditor of the Manchester Manufacturing Company, Mr. Manchester and Mr. Smith representing all the stock at such meeting and both took part in the negotiations with the plaintiff which preceded the final action. The record of this meeting is signed, "Edwin A. Smith Clerk".

All through the business life of this company Mr. Manchester appears to have had the active management of its affairs and to have been frequently in conference with the defendant regarding such management. The plaintiff furnished silver and did refining for the corporation and he had

frequent interviews with the defendant at which matters pertaining to the business of the company were discussed and arranged. These matters included payments upon the plaintiff's account, the giving of notes, the payment of interest and the supplying of further material for the prosecution of the company's business.

Mr. Manchester and the defendant each drew a salary of $6,000 per year for most of the period. during which the company transacted business. The payments for salary were entered upon the books of the company, as salary, in the regular salary account down to 1913 and thereafter upon an account entitled, "anticipation account." The total salary paid to the defendant Smith was upwards of $48,000. In addition to the salaries paid, as above mentioned, large dividends were declared from time to time which in one year amounted to $50,000, or $25,000 to each of the two stockholders, Mr. Manchester and Mr. Smith. The only capital put into the business was the original $30,000 paid in on January 1, 1899, upon the organization of the. company. It is not surprising that with the payment of the salaries and dividends above described the company should have become embarrassed and its indebtedness should have increased to approximately $95,000, resulting in a condition of insolvency.

The claim of the plaintiff, as originally made, was $44,-004.15. Later, and before the trial, the plaintiff was obliged to take up a note for $5,000 given to him by the company and by him discounted at the Union Trust Company. The company paid a dividend, in bankruptcy, of 34⅛% and such a dividend was paid to the Trust Company on account of said note. The present claim of the plaintiff, for which judgment was rendered in his favor in the Superior Court, includes a balance of book account and the balance of the $5,000 note after deducting therefrom the dividend thereon paid to the Trust Company.

The Manchester Manufacturing Company became a business corporation under articles of association dated

December 21, 1898, in which it was declared that William H. Manchester, Edwin A. Smith and Henry C. Babcock associated themselves together "for the purpose of constituting a corporation" by virtue of the powers conferred by Chapter 176 of the General Laws of Rhode Island, 1896. This chapter is what is commonly called the general corporation act which authorizes the secretary of state, upon compliance with its provisions, to issue a certificate to the effect that such provisions have been complied with and further provides that upon the issuance of such certificate the "corporators, their associates, successors and assigns, shall be authorized to transact business as a corporation, with all the powers and subject to all the duties and liabilities, as provided in chapters one hundred and seventy-seven and one hundred and eighty, . . ." Sections 1, 2, and 3 of Chapter 214 of the General Laws of 1909 are substantially the same as the corresponding sections of Chapter 180 of the statute of 1896.

The defendant claims that the word "charter" as used in Sections 1 and 2, and impliedly in Section 3, of Chapter 214 must be construed to relate to corporations created by special act of the General Assembly and that they have no application to the Manchester Manufacturing Company which was established under the general act.

The general corporation act, so-called, was passed with the evident purpose of making the benefits of incorporation more readily obtainable by those who might desire or have occasion to act in a corporate capacity. Before the passage of the general act an act of incorporation could be secured only during a brief portion of each year in which the General Assembly was actually in session, and even then its procurement was usually attended with some delay. The effect of an organization under the general act is to give to the corporation the same powers and privileges which it would enjoy through a special act. The only difference is in the method of procedure through which such powers and privileges are sought and obtained. One definition of the word

"charter" to be found in Webster's New International Dictionary is, "A modern charter is usually one creating and defining the franchise of a corporation or association public or private. The charter may consist of a single document specially granted, as a statute; or it may be constituted by the terms of a general law taken with other documents duly executed in accordance therewith." We think that it was in this sense that the word "charter" as used in Sections 1, 2, and 3 of Chapter 214 must have been understood by the General Assembly in the passage of the general corporation law. We can discover no intention to make a distinction between two corporations, one organized under the general law and the other under a special act. These sections would be as beneficial and salutary when applied in one case as in the other. We think further that inasmuch as the general act makes all corporations organized under it subject to the provisions of Chapter 214, "Of Manufacturing Corporations," the General Assembly could not have intended to divide manufacturing corporations into two classes, one originating by a special act and the other under the general act and to differentiate their powers and liabilities. We see no reason why and can conceive of no reasonable theory upon which such a distinction should or could be made. We believe that the General Assembly, in passing the general act, and making it subject to the provisions of Chapter 214, must have construed the meaning of the word "charter" in that chapter in accordance with the definition which we have above quoted rather than in the strictly limited sense claimed by the defendant.

We will now take up the question of the defendant's (3) liability under Section 12. There is no dispute that in the case of the Manchester Manufacturing Company the amount of capital stock paid in was $30,000, and that the indebtedness of that company was allowed to increase until it reached the sum of $94,889.61.

There can be no question that, under such conditions, the directors of the company would be jointly and severally liable under the above mentioned section.

The defendant, however, claims that he is not liable to the plaintiff in the present action (1) because he ceased to be a director after the first Tuesday of April, 1899, before the excess indebtedness was incurred, and (2) that he did not thereafter in fact assume or attempt to discharge, as a director, any duties related to the administration of the affairs of the company.

In support of the proposition that he ceased to be a director after the first Tuesday of April, 1899, the defendant cites *Van Amburgh* v. *Baker,* 81 N. Y. 46 and *Sturges* v. *Vanderbilt,* 73 N. Y. 384. These cases do not seem to us to cover the situation presented by the case at bar as they materially differ therefrom in important facts. In *Van Amburgh* v. *Baker* the corporation had become insolvent and discontinued its business. It did no business after January 15, 1875. On that day the trustees passed a resolution that the corporation should cease to transact business and resigned their office to take effect at the end of their terms, and they did not act as trustees after that date. The court held that the defendants were not liable for their failure to file an annual report in January, 1876, as they had "not only ceased to act as trustees, but before the expiration of the year for which they were elected they made a distinct avowal that they would not act as directors after February 25, 1875."

The case of *Sturges* v. *Vanderbilt* was an action brought to compel the application of certain moneys received by stockholders of a corporation, out of its assets, to the payment of a judgment alleged to have been obtained by the plaintiff's intestate against the corporation. It appeared that in January, 1864, the defendant Vanderbilt and others were directors and that there was no election of directors, or other officers, after that time, but it also appeared that in September, 1864, Vanderbilt sold his shares in the corporation and ceased to be a stockholder and that he did not act or assume to act as a director and did not engage in any transaction as a stockholder, director, officer or otherwise. Upon

these facts the court said: "By the terms of the charter of
the company the directors were to be elected annually for
the term of one year. The charter contains no provision
as to directors holding over until their successors are elected.
Although by the general rule of law directors may so hold
over, yet there is no rule which compels them to do so, and
where as in this case a director sells out all his stock in a cor-
poration and ceases to take any part in the management of
its affairs or the meetings of its directors, he is not bound to
see that a successor is elected in his place or to tender any
formal resignation. It would be a very arbitrary rule to
hold that a director elected for one year, after thus severing
all connection with a company, should be responsible for the
acts of those who were in its management at the time of its
dissolution five years afterwards, and who alone had the
charge and custody of the property of the corporation then
remaining, and the control of its affairs. Such long con-
tinued absence after having parted with all his interest is
quite equivalent to a formal resignation, and an unequivocal
abandonment of any right to hold over."

At the first meeting of the corporation held December 21,
1898, the defendant and two others were elected directors
"to hold office until the annual meeting to be held on the
first Tuesday in April, 1899," and the defendant claims that
his term of office being thus expressly limited, and there
being no statutory provision for his holding over until the
election of his successor, he ceased to be a director *de jure*
as soon as the time for the annual meeting had passed. At
the same time the defendant admits that if he had continued
to act after the expiration of the term for which he was
elected he would be liable as a director *de facto* and he cites
several cases in support of the proposition that if an officer
of a corporation does not act after the expiration of his
term of office, he will not be liable for any neglect of duty.
We see no occasion to discuss these authorities in that con-
nection. The defendant was elected a director at the organi-
zation meeting of December 21, 1898, for the period which

would elapse between that date and the first annual meeting which would occur on the first Tuesday of April, 1899. Preceding such election, but at the same meeting, by-laws were adopted providing, among other things, that "the officers of the corporation shall be elected by the stockholders at the annual meeting and shall hold office for one year or until their successors are duly elected." This limitation of the period, for which the defendant was elected as a director, was no different in its effect than would be an election at an annual meeting "for the ensuing year" which is the form usually employed in the election of corporate officers. The defendant does not question the legality of his election as treasurer, secretary and director of the Manchester Company at the organization meeting on December 21, 1898. He admits that he was present at that meeting; that he was duly elected to the offices in question; that he accepted the office of director and that he never resigned either of the offices to which he was then chosen. The Manchester Company did not hold any annual meeting on the first Tuesday of April, 1899, and has never since, at any time, held an annual meeting. The by-laws provided that officers should be elected "at the annual meeting and shall hold office for one year or until their successors are duly elected."

The officers and directors of the Manchester Company were elected in accordance with the by-laws, already adopted, and we think that the provision, as to holding over, may be just as appropriately applied to them as it might be to officers elected at an annual meeting for "one year or until their successors are duly elected." *Hugenot National Bank v. Studwell*, 6 Daly (N. Y.) 13. In either case the transaction of the company's business would require the same officers, the exercise of the same powers and the discharge of the same duties. The directors were not elected to discharge some particular or specified duty or duties. They were chosen under a provision of the by-laws investing them with the full control of the affairs of the corporation. If the

defendant is correct in claiming that during the time this indebtedness was incurred, he was neither a *de jure* nor a *de facto* officer, it must necessarily follow that the Manchester Company from the first Tuesday in April, 1899, the date when the first annual meeting might have been held, to February 1, 1915, when it went into bankruptcy, was without any treasurer, secretary or board of directors, although during that long period the company transacted a large amount of business, declared large dividends and paid large salaries, the salary of the defendant, as we have seen, aggregating upwards of $48,000.

In *Hudson* v. *Parker Machine Co.*, 173 Mass. 242, the court said: "It appeared by the record that in 1886 Dakin was elected president and one of the directors, and that at the same time Murdock was elected treasurer and one of the directors. Oral testimony was admitted against the defendants' objection that in January, 1891, there was a meeting of the stockholders at which the same officers were elected, and that the clerk of the company made minutes of the meeting on a piece of paper which had been lost, and made no other record of the proceedings. . . . It appeared that from January, 1891, to and including December 2, 1896, the defendants Dakin and Murdock had the active management, direction, and control of the business of the corporation; that Dakin held himself out to the public as president and a director, and Murdock held himself out as treasurer and a director. We are of opinion that this evidence was competent, and that it well warranted the finding that, if Dakin was not president *de jure* he was president *de facto*, and that if Murdock was not treasurer *de jure* he was treasurer *de facto*, and that if both of them were not directors *de jure* they were directors *de facto*."

Machen in his work on corporations says, Vol. 2, Sec. 1433: "Under a provision that directors shall hold office for one year from the time of their election and until their successors are chosen, directors who are chosen to fill interim vacancies hold over after the year of office for which their predecessors were chosen until the election of successors."

Although the defendant testifies that he never acted as treasurer at any time, it appears that the papers required in the assignment of certain claims to the plaintiff in November, 1913, were signed by him as treasurer of the Manchester Company.

The case of *First National Bank* v. *Lamon*, 130 N. Y. 366, cited in defendant's brief, was a suit brought by a creditor of a corporation, organized under a general act, against trustees to enforce a liability arising through a failure to file an annual report; one of the defendants claimed that he was not a trustee at the time when such report should have been filed. The defendant was elected in 1880. No further election was held. He testified that after the expiration of one year from his election he was never notified of or attended any meeting, was never consulted about or took any part in the affairs of the company. It appeared, however, that in 1886 the defendant made an affidavit in which he stated that he was a trustee and referred to certain other persons as his co-trustees. He testified that in making such affidavit he did not understand that he was stating that he was at that time a trustee, but supposed he had stated that he was once a trustee. The finding of the referee was adverse to the defendant, was not reversed by the General Term, and on appeal was allowed to stand as an established fact.

While the defendant denies that he received any salary as secretary, treasurer or director, and says that he received it "for other reasons," he fails after some interrogation on that point to state what the other reasons were. While the board of directors never met formally, we think it fully appears that in all the years during which the Manchester Company transacted business the defendant and Mr. Manchester dictated its policy and directed its affairs. Yearly reports as to the standing of the company were submitted to the defendant, and frequent interviews occurred between the defendant and Mr. Manchester, sometimes at clubs or at their homes, at which they discussed the indebtedness

and the general business affairs of the company. The plaintiff testifies that he had frequent interviews with the defendant in regard to his account against the company and in matters relating to the charging of interest on accounts and notes. In the matter of the fixing of salaries and the declaring of dividends, Mr. Manchester and the defendant seem to have been in perfect harmony, no ripple of dissatisfaction in that respect intruding itself upon the record.

(4)    Formal meetings of directors are not necessary where their usual course of business is to act informally. *De Pasquale* v. *Mason Manufacturing Co.*, 39 R. I. 114; *Bank of Middlebury* v. *Rutland and Washington R. R. Co.*, 30 Vt. 159, 169; *Estes* v. *German National Bank*, 62 Ark. 7, 19; *Edwards* v. *Armour Packing Co.*, 90 Ill. App. 333.

It is evident that Mr. Manchester and the defendant, while they did not meet together in a formal manner as directors, they did, through informal interviews and conferences, accomplish the same result which would have attended a more ceremonious attitude. We could hardly be expected to hold that the directors of a corporation could refrain from formal meetings, transact their business in the manner resorted to by these parties, and reap the benefit of an exemption from liability. Such an announcement would point out an easy method by which the directors of any corporation, similarly situated, might elude the responsibility imposed by the statute.

We think that the Superior Court, on the facts as presented by the testimony, was fully warranted in finding that the defendant was a director *de facto* if not *de jure*, and that as such director he was liable to the plaintiff for the amount of his claim under Section 12, Chapter 214 of the General Laws of 1909.

The defendant has presented a somewhat ingenious argument by which he attempts to show that Sections 1, 2, and 3 of said Chapter 214 were in effect repealed or rendered inoperative by Chapter 555 of the Public Laws of 1876. These sections have been continued and re-enacted in the

revisions since 1876 and the amendment which was the subject of Chapter 555 now appears in our present statute as Section 11. In other words, the defendant claims that Section 11 of Chapter 214 of the General Laws of 1909 repeals or renders inoperative Sections 1, 2, and 3 of the same chapter. We are not able to follow the defendant to the end which he seems to have reached. We feel, however, that in view of the conclusions to which we have already arrived upon the question of the defendant's liability, under Section 12, that any discussion of this point would be barren of useful results and should not therefore be entered upon.

The defendant's exceptions are all overruled and the case is remitted to the Superior Court with direction to enter judgment for the plaintiff in accordance with the decision of that court.

*Tillinghast & Collins*, for plaintiff. *James C. Collins, Zechariah Chafee, Jr.*, of counsel.

*Gardner, Pirce & Thornley*, for defendant.